# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 195

Tess Hillestad,                                                Plaintiff and Appellee

v.

Payton Small,                                              Defendant and Appellant

### No. 20230006

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Rodney E. Pagel, Bismarck, ND, for plaintiff and appellee.

Christopher E. Rausch, Bismarck, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Payton Small appeals from a judgment awarding Tess Hillestad primary residential responsibility of the parties' minor child. We conclude the district court's decision awarding primary residential responsibility to Hillestad, setting a parenting time holiday schedule, and granting Hillestad tie-breaking authority was not clearly erroneous. We affirm.

I

[¶2]   The parties were never married and have one child together. The child has "significant birth maladies" which require care. Since the child's birth, the parties have arranged for the child to spend two weeks with Hillestad and one week with Small.

[¶3]   Hillestad commenced this action in November 2021 requesting the district court determine primary residential responsibility and other issues. The court held a bench trial in October 2022.

[¶4]   The district court issued its order on residential responsibility in December 2022. Among other things, the court granted Hillestad primary residential responsibility, established a holiday schedule, and granted Hillestad tie-breaking authority for major medical decisions. A judgment was subsequently entered.

II

[¶5]   Small argues the district court was clearly erroneous in awarding primary residential responsibility to Hillestad.

[¶6]   On appeal, "[a] decision on primary residential responsibility is a finding of fact reviewed under the clearly erroneous standard of review." *Boldt v. Boldt*, 2021 ND 213, ¶ 8, 966 N.W.2d 897. The clearly erroneous standard of review is well established:

A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, on the entire record, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial primary residential responsibility decision merely because we might have reached a different result.

*Id.* (cleaned up) (quoting *Vetter v. Vetter*, 2020 ND 40, ¶ 8, 938 N.W.2d 417).

[¶7] When considering primary residential responsibility, the district court must award primary residential responsibility to the parent who will better promote the welfare and best interests of the child. *Boldt*, 2021 ND 213, ¶ 7. "The court must consider the thirteen best interest factors set out at N.D.C.C. § 14-09-06.2(1) when making its determination[.]" *Id*. The district court is required to consider all factors but does not need to make a finding on each factor. *Brown v. Brown*, 1999 ND 199, ¶ 11, 600 N.W.2d 869. In considering evidence related to the best interest factors the court is not required "to address each minute detail presented in the evidence[.]" *Law v. Whittet*, 2014 ND 69, ¶ 10, 844 N.W.2d 885. However, "the court may not wholly ignore and fail to acknowledge or explain significant evidence clearly favoring one party." *Id.*

A

[¶8] Small argues the district court did not consider his request for equal residential responsibility.

[¶9] "Whether or not joint custody is in the best interests of a child depends on the facts and circumstances of the particular case. We have never held there is a presumption against joint custody." *P.A. v. A.H.O.*, 2008 ND 194, ¶ 17, 757 N.W.2d 58 (internal citation omitted). Furthermore, "[r]egarding who 'will better promote the best interests and welfare of the child,' there is no presumption between the father and mother." *Rustad v. Baumgartner*, 2018 ND 268, ¶ 6, 920 N.W.2d 465 (quoting N.D.C.C. § 14-09-29(1)).

[¶10] The district court acknowledged and considered Small's request for equal residential responsibility. In its order, the court explained, "[o]n the first day of

2

trial, [Small] was wanting the Court to order that he have primary residential responsibility and [Hillestad] would be limited to alternating weekends." The court then acknowledged Small's second request for equal residential responsibility, stating, "[o]n the second day of trial, [Small] started the day by announcing that he no longer desired the radical change that he initially proposed, but now was requesting joint primary residential responsibility." The court also considered Small's request, finding "the proposed plan by [Small] of one week with [Hillestad] and one week with [Small] is not something that accommodates the current work schedule of [Small]."

[¶11] The district court was aware of and considered Small's request for equal residential responsibility.

B

[¶12] Small argues under best interest factors (a) and (d) the district court erroneously relied on the role of primary caretaker in reaching its decision. Best interest factors (a) and (d) are:

> a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.
> . . . .
> d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

N.D.C.C. § 14-09-06.2(1)(a), (d).

[¶13] "A court's choice for primary residential responsibility between two fit parents is a difficult one, and this Court will not retry the case or substitute its judgment for that of the district court when its decision is supported by the evidence." *Friesner v. Friesner*, 2019 ND 30, ¶ 6, 921 N.W.2d 898. Established patterns of care and nurture are relevant factors for courts to consider when determining an award of residential responsibility. *Heggen v. Heggen*, 452

3

N.W.2d 96, 101 (N.D. 1990). "While this Court has recognized a primary caretaker enjoys no paramount or presumptive status under the best interests of the child factors, we have also stated primary caretakers 'deserve recognition' in custody determinations." *Heinle v. Heinle*, 2010 ND 5, ¶ 9, 777 N.W.2d 590 (quoting *Heggen*, at 101).

[¶14] Addressing factor (a), the district court found both parents are able to provide love and emotional support for their child. The court went on to explain the child moved with Hillestad whenever she moved and the child lived wherever she lived. Under factor (d), the court found the child is accustomed to the schedule the parties have used since the child's birth. The record demonstrates Hillestad was the primary caretaker for much of the child's life. Although the court considered Hillestad's role as primary caretaker, the record does not demonstrate the court used Hillestad's role as primary caretaker as a paramount or presumptive status. The court's consideration of Hillestad's role as primary caretaker was not clearly erroneous.

C

[¶15] Small argues the district court improperly considered the parties' work schedules under best interest factor (b). Small argues the court's finding Hillestad's schedule was more accommodating to the child was clearly erroneous and the court's findings were inconsistent. Best interest factor (b) is "[t]he ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment." N.D.C.C. § 14-09-06.2(1)(b).

[¶16] Under factor (b), the district court considered the parties' work schedules along with the medical needs of the child. "[W]here each parent works outside of the home and where each has the ability and desire to care for their children, the trial court must necessarily weigh the circumstances on a fine and delicate scale." *Schmidt v. Schmidt*, 2003 ND 55, ¶ 9, 660 N.W.2d 196 (quoting *Landsberger v. Landsberger*, 364 N.W.2d 918, 920 (N.D. 1985)). Here, the court considered the parties' schedules in the context of the child's medical needs and further considered Hillestad works with a childcare provider with whom the

4

child is already familiar. We conclude the court's findings under factor (b), including its consideration of the parties' work schedules, were not clearly erroneous.

C

[¶17] For the other best interest factors, Small asks this Court to reweigh the evidence presented at trial. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and 'we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result.'" *Wolt v. Wolt*, 2010 ND 26, ¶ 7, 778 N.W.2d 786 (quoting *Lindberg v. Lindberg*, 2009 ND 136, ¶ 4, 770 N.W.2d 252); *see Voigt v. Nelson*, 2020 ND 113, ¶ 6, 943 N.W.2d 783. On this record, we conclude the district court did not clearly err when it awarded residential responsibility to Hillestad.

III

[¶18] Small argues the district court erroneously found he asked the court to order a parenting time holiday schedule consistent with the parties' interim order, arguing he never made that request.

[¶19] "This Court reviews the district court's decision on parenting time under the clearly erroneous standard." *Eikom v. Eikom*, 2022 ND 91, ¶ 7, 974 N.W.2d 387. "In awarding parenting time to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *In re N.C.M.*, 2013 ND 132, ¶ 41, 834 N.W.2d 270 (cleaned up) (quoting *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113).

[¶20] Here, the district court stated Small requested the holiday schedule be consistent with the interim order. The court correctly stated what Small requested in his post-trial brief. Small specifically requested the court order "the parties continue to utilize the alternating holiday schedule as set forth in the Interim Order[.]"

[¶21] Small further argues the district court did not consider his objection to the parenting plan containing a right of first refusal. The right of first refusal

5

in the judgment states, "In the event either parent is required to work and the other parent is personally available to take care of the minor child, the non-working parent shall be given the first opportunity to provide child care." The court found the two individuals who have the most right to spend time with the child are Hillestad and Small. The right of first refusal allows the child to spend more time with Hillestad and Small. The court's inclusion of a right of first refusal in the judgment is not clearly erroneous. *See State v. Andres*, 2016 ND 90, ¶ 12, 879 N.W.2d 464 (stating the parenting plan is not clearly erroneous "[b]ecause it has not been shown the current plan harms the child's best interests and because the parties may modify the plan through mediation").

IV

[¶22] Small argues the district court erred when it awarded Hillestad tie-breaking authority over major decisions. He argues neither party should have tie-breaking authority and instead contends the parties should rely on the opinion of an appropriate expert if the two sides cannot agree.

[¶23] A district court's determination of final decision-making authority is analyzed under the clearly erroneous standard of review. *Sayler v. Sayler*, 2023 ND 156, ¶ 42, 994 N.W.2d 351. "A parenting plan must include a provision relating to decision[-]making responsibility, N.D.C.C. § 14-09-30(2)(a), and that responsibility must be allocated in the best interests of the child, N.D.C.C. § 14-09-31(2)." *Sayler*, at ¶ 40 (quoting *Dick v. Erman*, 2019 ND 54, ¶ 14, 923 N.W.2d 137). "With two parents, there is always a potential for the parties to reach a point of impasse when it comes to decisions about their child." *Id.* (quoting *Dick*, at ¶ 15).

[¶24] Addressing decision-making responsibility and the child's medical needs, the district court wrote "[t]he parties should try to examine their view and listen to the experts." However, the court found Hillestad is more familiar with the child's medical needs and, "due to [Hillestad's] superior knowledge of [the child's] medical conditions," granted Hillestad tie-breaking authority over major decisions. On this record, we conclude the court did not clearly err when it awarded final decision-making authority to Hillestad. *See Sayler*, 2023 ND

156, ¶¶ 41-42 (concluding award of final decision-making authority to mother, "after good faith efforts by the parties to make a joint decision and work with a qualified third party," was not clearly erroneous); *Dick*, 2019 ND 54, ¶ 15 ("Eventually a decision must be made, and we are not left with a definite and firm conviction a mistake was made regarding the district court's determination of decision-making responsibility.").

V

[¶25] We have considered Small's remaining arguments and conclude they are either without merit or are not necessary to our decision. The district court's judgment is affirmed.

[¶26] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr