Shemika LEE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–0002–CR–44.

Supreme Court of Indiana.

Oct. 6, 2000.

the maximum sentence for the Class C felony and order it served consecutively. *Cutter v. State,* 725 N.E.2d 401, 409 n. 3 (Ind.2000).

Ernest P. Galos, South Bend, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Shemika Lee was convicted of felony murder for the death of Kevin McLoughlin and sentenced to sixty years imprisonment. On direct appeal, Lee presents three issues for review: (1) whether the trial court erred in denying a change of judge based on the judge's having presided over hearings dealing with a plea agreement by an accomplice; (2) whether the trial court abused its discretion by admitting allegedly prejudicial photographic evidence; and (3) whether the felony murder conviction was based on sufficient evidence. We affirm the trial court.

**Factual and Procedural Background**

In the early morning hours of May 30, 1998, Kevin McLoughlin and his wife Jen-

nifer drove to the six hundred block of Cottage Grove Avenue in South Bend to pick up a friend. The friend was not at home when they arrived and they decided to wait in the car for his return. Kevin then noticed another acquaintance and left the car to chat with her. Jennifer remained in the car and, after a few minutes, saw Kevin walk down the street to talk with a group of ten to fifteen people.

Meanwhile, DeCarlos Avance, a neighborhood resident, approached Janice Boyd and Shemika Lee in Boyd's yard and announced his plan to rob a man down the street. Avance was an acquaintance of both women. Lee had told Boyd earlier that day that Avance had given Lee a gun. Avance asked Lee if she had "that" and if she would "walk with him." Lee agreed. Avance and Lee approached Kevin on the street and Avance grabbed Kevin's wrist and attempted to steal his wallet. As they struggled, Kevin was shot once. The bullet pierced his heart and he died at the scene.

Avance was taken into custody a few days after the shooting and told police that Lee was the shooter. Police contacted Lee's sister and Boyd in an effort to reach Lee. In response, Lee voluntarily went to the police station accompanied by Boyd, Lee's sister, and another acquaintance. Lieutenant William Thompson conducted an unrecorded interview with Lee. According to Thompson, Lee told him that the gun was in her hand when it discharged and killed Kevin. Lee was allowed to leave the police station immediately after the interview, but she was later arrested and charged with conspiracy to commit robbery, robbery, and felony murder.

In the meantime, Avance entered into an agreement to plead guilty to robbery with a recommendation of an executed sentence of twenty years. He also agreed to testify at Lee's trial, but, for reasons not apparent from the record, he did not do so. Judge Jerome Frese presided at Avance's plea hearing and elicited the factual basis of the guilty plea, including Avance's repeated claim that Lee fired the gun that killed Kevin. The plea was accepted, but a few months later, Avance sent the judge a handwritten note asking to withdraw his guilty plea. Judge Frese held a hearing, expressed his belief that Avance had been offered a good deal by the State, and indicated that he was not inclined to allow Avance to withdraw his plea. Avance then withdrew his pro se motion.

Judge Frese also presided over Lee's jury trial. After each of the two hearings related to Avance's plea agreement, Lee filed a motion for a change of judge on the ground that Judge Frese presided over the hearing and thereby acquired information bearing on Lee's trial. The judge denied both motions, finding that there was no showing of actual bias against Lee. During trial, the State dismissed the charges of conspiracy to commit robbery and robbery against Lee and added a charge of attempted robbery. Lee was convicted by a jury of felony murder and attempted robbery. The latter was dismissed by the trial court as a lesser included offense of the former and Lee was sentenced to sixty years for felony murder.

## I. Motion for Change of Judge

Lee asserts that the trial court erred by refusing to grant her motions for a change of judge under Indiana Criminal Rule 12(B). Lee argues that by presiding over the hearings related to Avance's plea agreement, Judge Frese acquired knowledge of Lee's case that required his recusal under Canon 3(E)(1)(a) of the Code of Judicial Conduct. That canon provides, in relevant part:

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has ... personal knowledge of disputed evidentiary facts concerning the proceeding.

The personal knowledge that requires recusal is knowledge acquired from extrajudicial sources. *Jones v. State*, 416 N.E.2d 880, 881 (Ind.Ct.App.1981). It is obvious in this case that Judge Frese was acting in his official capacity during both hearings dealing with Avance's plea agreement. Any knowledge he gained through his service as a sitting judge is not "personal" within the established meaning of the canon. Although this Court has not addressed the specific points Lee raises, the Court of Appeals has previously held that a judge need not disqualify himself merely because he has made an adverse ruling against a defendant in a related action, *Stanger v. State*, 545 N.E.2d 1105, 1118 (Ind.Ct.App.1989), or because he has presided over the trial of a co-defendant, *Jones*, 416 N.E.2d at 882.

Further, the law presumes that a judge is unbiased and unprejudiced in the matters before him. *Clemens v. State*, 610 N.E.2d 236, 244 (Ind.1993). The record must show actual bias or prejudice of the judge against the defendant before a conviction will be reversed on the ground that the trial judge should have disqualified himself. *Sturgeon v. State*, 719 N.E.2d 1173, 1181–82 (Ind.1999). Lee alleges that Judge Frese demonstrated bias by peremptorily denying a defense counsel objection during the cross-examination of Officer Thompson. As we read the record, it shows only that the judge denied defense counsel's request to go off the record. This is clearly within the trial court's discretion. We find no indication that Judge Frese demonstrated any actual bias or prejudice against Lee. Accordingly, the trial court did not err in denying the motions for a change of judge.

## II. Photographic Evidence

Lee claims that the trial court abused its discretion by admitting a photograph of Kevin's body at the crime scene. Lee argues that the relevance of the photograph, which shows Jennifer kneeling over her husband's bloody body, was clearly outweighed by the likelihood that it would inflame the jury.

This Court reviews the trial court's decision to admit photographic evidence for an abuse of discretion. *Cutter v. State*, 725 N.E.2d 401, 406 (Ind.2000). Although a photograph may arouse the passions of the jurors, it is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403; *accord Cutter*, 725 N.E.2d at 406. Photographs depicting matters that a witness describes in testimony are generally admissible, and photographs depicting the crime scene are admissible as long as they are relevant and competent aids to the jury. *Woods v. State*, 677 N.E.2d 499, 504 (Ind.1997). The fact that a photograph or videotape may depict gruesome details of a crime is not a sufficient basis for exclusion. *Isaacs v. State*, 659 N.E.2d 1036, 1043 (Ind.1995).

The photograph here offered probative value by accurately depicting the crime scene as described in the testimony of an officer who arrived at the scene shortly after Kevin was shot. Lee claims that Jennifer's presence in the photograph serves only to "harden the jury" against Lee and suggests that the prejudice inspired by sympathy for the victim's wife outweighs any probative value. The scene is sad and disturbing, but Jennifer's face is largely blocked and any expression of grief or shock is hidden in the photograph. The most striking feature of the photograph is Kevin's bloody corpse, and, although the victim's death mask and the pool of blood are unpleasant to view, the photograph is not so gruesome as to be unduly prejudicial. It does not show a graphic close-up of the wound or the victim's body in an altered state. Because the probative value was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion in admitting this exhibit.

### III. Sufficiency of Evidence

Finally, Lee argues that there was insufficient evidence to support her conviction for felony murder. Specifically, she claims that the "sole basis of the conviction appears to be Lt. Thompson's testimony" that Lee confessed to him and that his testimony invokes the "incredible dubiosity doctrine."

Lee's reliance on "incredible dubiosity" is misplaced. That doctrine is limited to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994). Although Thompson was the only testifying witness to Lee's confession while in police custody, he was not the only witness to testify against her. His testimony was uncorroborated, but it was not inherently improbable. Nor was there a lack of circumstantial evidence of Lee's guilt.

Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Carr v. State*, 728 N.E.2d 125, 129 (Ind.2000). In addition to Thompson's testimony concerning Lee's confession, Boyd's testimony concerning Lee's and Avance's behavior immediately before Kevin's death, and Boyd's limited eyewitness account of the shooting corroborated the State's view of the crime. The credibility of these two witnesses was for the jury to determine. We cannot conclude that there was insufficient evidence for the jury to convict Lee of felony murder.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.