Filed 2/17/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 24

Theresa Marie Horsted, Plaintiff and Appellant

v.

Christopher D. Horsted, Defendant and Appellee

No. 20110206

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Thomas E. Merrick, Judge.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Tracey R. Lindberg (argued), 1323 Highway 75 North, Breckenridge, MN 56520, for plaintiff and appellant.

Lawrence P. Kropp (argued), 105 10th Street SE, Jamestown, ND 58401-5549, for defendant and appellee.

Horsted v. Horsted

No. 20110206

Kapsner, Justice.

[¶1] Theresa Horsted appeals from a district court order, divorce judgment, and amended divorce judgment awarding Christopher Horsted joint decisionmaking responsibility and visitation with the parties’ daughter and dividing custody investigator fees between the parties.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2] Theresa and Christopher Horsted were married on September 13, 2009 and had one child, R.M.H., born in 2010.  The parties later separated, and Theresa Horsted commenced an action for divorce.  Theresa Horsted claimed Christopher Horsted was verbally and physically abusive toward her; he denied her allegations.  Theresa Horsted reported one incident of alleged domestic violence to law enforcement, but no charges were filed.  Christopher Horsted was previously charged with simple assault against a former girlfriend.  Following a motion by Christopher Horsted, which Theresa Horsted opposed, the district court ordered the appointment of a custody investigator.  The custody investigator completed a report, recommending a graduated parenting time schedule and suggesting “[p]rior to any unsupervised visits with Christopher [Horsted] . . . , he will complete an Anger/Domestic Violence Assessment and all recommendations resulting from the assessment.”

[¶3] The parties agreed that Theresa Horsted would have primary residential responsibility, but remained unable to agree on various issues relating to R.M.H., and a trial was held.  The court subsequently issued an order requiring each party to pay half of the custody investigator fees.  The court also entered a divorce judgment that adopted the parenting plan proposed by Christopher Horsted and granted the parties joint decisionmaking responsibility with respect to R.M.H.  After the commencement of the parenting plan, Theresa Horsted moved for its amendment, claiming R.M.H. was having difficulty adjusting to the visitation schedule.  Following a hearing on the motion, the court modified the parenting plan in an amended judgment.

II

[¶4] Theresa Horsted argues the court erred in awarding joint decisionmaking responsibility to the parties, and in adopting Christopher Horsted’s proposed parenting plan, then inadequately amending the plan after R.M.H. exhibited behavioral changes following visitation.  Custody and visitation determinations are findings of fact and will not be reversed on appeal unless they are clearly erroneous.  
Edwards v. Edwards
, 2010 ND 2, ¶ 7, 777 N.W.2d 606.  We have stated:

A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made.

Id.
  Under the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, or substitute our judgment for the district court’s decision merely because we might have reached a different result.  
Wolt v. Wolt
, 2010 ND 26, ¶ 7, 778 N.W.2d 786.

A

[¶5] Theresa Horsted claims the court erred in awarding the parties joint decisionmaking responsibility.  The parties stipulated that Theresa Horsted would retain primary residential responsibility for R.M.H., but they did not agree on a parenting plan.  “If the parents are unable to agree on a parenting plan, the court shall issue a parenting plan considering the best interests of the child.”  N.D.C.C. § 14-09-

30(1).  A parenting plan must include a provision relating to decisionmaking responsibility, N.D.C.C. § 14-09-30(2)(a), and that responsibility must be allocated in the best interests of the child, N.D.C.C. § 14-09-31(2).  The best interests factors are delineated in N.D.C.C. § 14-09-06.2.  A district court need not make separate findings for each best interests factor but, as with custody, the court’s findings must contain sufficient specificity to show the factual basis for the decision.  
Wolt
, 2010 ND 26, ¶ 9, 778 N.W.2d 786.  Here, the district court did not discuss the best interests factors at trial.  In its May 27, 2011 order for judgment, the court stated it “finds that the Defendant’s proposed parenting plan is in furtherance of the best interests and welfare of the parties’ minor child,” but included no other findings to show its factual basis for awarding joint decisionmaking responsibility.  “When a trial court does not make required findings, it errs as a matter of law, and it is necessary to remand for additional findings.”  
Sailer v. Sailer
, 2009 ND 73, ¶ 28, 764 N.W.2d 445.  We conclude the district court did not provide sufficient findings to allow proper appellate review of its decision, and we reverse and remand with instructions to make findings regarding R.M.H.’s best interests.

[¶6] Theresa Horsted also asserts the court erred in awarding joint decisionmaking responsibility because domestic violence occurred in the parties’ relationship, and “[t]he court’s analysis was made under a misapprehension of what constitutes ‘domestic violence.’”  She points to N.D.C.C. § 14-09-31(4), which provides:

If the court finds that 
domestic violence as defined in section 14-07.1-

01
 has occurred, the court shall consider such domestic violence in determining whether joint decisionmaking responsibility is in the best interests of the child.  In such cases, the court shall make orders for the allocation of parental rights and responsibilities that best protect the child, the parent, or both.  If joint decisionmaking responsibility is granted, even though there is evidence of domestic violence, the court shall provide written findings to support the order.

(Emphasis added.)  In this case, the district court stated, “I don’t find there’s any domestic violence under the statute.”  The court went on to discuss a definition of domestic violence derived from N.D.C.C. § 14-09-06.2(1)(j), rather than N.D.C.C. § 14-07.1-01, when it stated “the statute . . . says that domestic violence has to be one incident resulting in serious[] bodily injury . . . .  One incident involving the use of a dangerous weapon . . . .  Or, a pattern of domestic violence within a reasonable time proximate to the proceeding . . . .”  Those criteria were a proper consideration under N.D.C.C. § 14-09-29.  But a different standard applies to considerations of joint decisionmaking responsibility.  Under N.D.C.C. § 14-07.1-01, “domestic violence” is defined as “physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.”

[¶7] At trial, the court found that Christopher Horsted “grabbed—he didn’t choke her, but . . . pretty much like she says. . . . [H]e grabbed her [by] the neck and he shoved her and slammed her up against the—[sic][.]”  The court also found that Theresa Horsted had pulled Christopher Horsted’s hair in a separate incident.  Based on these findings, the definition of “domestic violence” in N.D.C.C. § 14-07.1-01 may be satisfied, and the court erred in instead applying the definition of “domestic violence” from N.D.C.C. § 14-09-06.2(1)(j).  When domestic violence is involved, N.D.C.C. § 14-09-31(4) then requires the court to provide written findings to support an order granting joint decisionmaking responsibility.  We reverse and remand for additional findings on this issue.

[¶8] Theresa Horsted argues the court “failed to consider the lack of the ability of the parties to make joint decisions.”  Section 14-09-31(3), N.D.C.C., addresses situations when parties do not agree on a parenting issue:  “An allocation of decisionmaking responsibility is not in the best interests of the child unless the order includes a method of resolving disputes when parents do not agree on an issue.”  At trial, the court contemplated a method for resolving disputes and appointed Jesse Hopewell, a lay pastor at Theresa Horsted’s church, to work with the parties in resolving disputes relating to R.M.H.  Although the court orally appointed Hopewell to mediate disputes, the court’s written findings and conclusions do not include this appointment.  We remand with instructions that the court address dispute resolution in its order.

B

[¶9] Theresa Horsted contends the court erred in adopting Christopher Horsted’s proposed parenting plan because the “court is obligated to make decisions on parenting time based upon its own assessment of the best interest factors.”  “In awarding visitation to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount.”  
Bertsch v. Bertsch
, 2006 ND 31, ¶ 5, 710 N.W.2d 113.  “[A] restriction on visitation must be based on a preponderance of the evidence and be accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation.”  
Marquette v. Marquette
, 2006 ND 154, ¶ 9, 719 N.W.2d 321; 
see also
 N.D.C.C. § 14-05-22(2).

[¶10] Here, the court implied it did not find Theresa Horsted demonstrated, by a preponderance of the evidence, that R.M.H. would likely be physically or emotionally harmed by visitation with Christopher Horsted.  The court stated Theresa Horsted did not present “any kind of realistic parenting plan,” and chose “to adopt [Christopher Horsted’s plan] One Hundred percent[.]”  A court may direct counsel to prepare findings, which become the court’s findings once it affixes its signature to them.  
Kramer v. Kramer
, 2006 ND 64, ¶ 8, 711 N.W.2d 164.  However, the findings must still be sufficient to understand the basis for the court’s decision.  
Wolt
, 2010 ND 26, ¶ 9, 778 N.W.2d 786.  The court did not discuss the best interests factors at trial and merely referenced them in its order for judgment by stating it found “the Defendant’s proposed parenting plan is in furtherance of the best interests and welfare of the parties’ minor child[.]”  The court’s findings are insufficient to understand the basis for its decision, and we remand for additional findings.

[¶11] Theresa Horsted also asserts the court “arbitrarily disregard[ed] the testimony of the custody [investigator]” because it chose not to follow the investigator’s recommendations, despite the court’s recognition that Christopher Horsted “is a little irresponsible . . . and has probably too much of a temper.”  We have consistently held that district courts have discretion in deciding the weight to assign a custody investigator’s recommendations, and courts need not follow those recommendations.  
Doll v. Doll
, 2011 ND 24, ¶ 30, 794 N.W.2d 425.  In this case, the court was able to review the custody investigator’s report, and the investigator testified at trial, along with the parties.  The investigator explained she recommended supervised visitation until Christopher Horsted completed an anger domestic violence assessment and followed all recommendations because “[m]y concern is for the child and to make sure that she is safe and because I’m not the expert about domestic violence, then I need to recommend someone who is.”  The investigator also testified she recommended a graduated parenting time schedule because Christopher Horsted “had very little interaction [with R.M.H.] for the past year or so” and because consistency “is very important for the child, particularly at [this] age[.]”  Nonetheless, because the court has broad discretion in deciding the weight assigned to a custody investigator’s recommendations, the court did not clearly err by not following those recommendations.

[¶12] Theresa Horsted finally claims that, although the court amended the parenting plan after reviewing evidence that R.M.H. was not adjusting well to the scheduled visitations, the court’s amendment was inadequate.  Along with her motion to amend the parenting plan, Theresa Horsted submitted an affidavit stating that, after visitation with Christopher Horsted, R.M.H. would experience extended bouts of crying and hysteria and would pull hair out of her head.

[¶13] “To modify visitation, the moving party must demonstrate that a material change in circumstances has occurred since entry of the previous visitation order and that the modification is in the best interests of the child.”  
Dufner v. Trottier
, 2010 ND 31, ¶ 6, 778 N.W.2d 586.  In its amended judgment, the court found a material change in circumstances had been demonstrated.  The court allowed Christopher Horsted to complete the week of extended summer visitation that had already commenced, but ordered no further extended parenting time to take place until 2012.  The court did not make specific findings regarding R.M.H.’s best interests, but we conclude its findings are sufficient to show its basis for amending the parenting plan.  The court discussed Theresa Horsted’s observations of adverse behaviors and reactions in R.M.H. during parenting exchanges and upon R.M.H.’s return to Theresa Horsted’s care, acknowledging that “[t]he previously ordered parenting schedule may have been too much too soon. . . .  [I]t is in the child’s best interests to modify the parenting time of [Christopher Horsted] . . . .”  The court’s amendment on extended summer visitation is not clearly erroneous.  However, because we are remanding for additional findings, the court may make additional amendments based upon those findings.

III

[¶14] Theresa Horsted argues the court erred in allocating half of the custody investigator fees to her because she “had borne the sole brunt of financial responsibility for the minor child, for over a year with no child support, and minimal contributions from [Christopher Horsted,]” adding that she alone paid “for the full family insurance[,]” for Christopher Horsted’s cell phone, and for R.M.H.’s medical bills.  Because she opposed the appointment of the custody investigator and the court “disregard[ed] the concerns and recommendations made by the investigator,” Theresa Horsted contends the court abused its discretion and arbitrarily and unreasonably ordered her to pay for half of the custody investigator fees.

[¶15] Section 14-09-06.3(4), N.D.C.C., governs allocation of custody investigator fees:

The court shall enter an order for the costs of any such investigation against either or both parties, except that if the parties are indigent the expenses must be borne by the county where the child resided at the time the action was commenced or if a modification of parental rights and responsibilities, at the time the motion to modify is served.

In this case, neither party is indigent, and the statute grants the court discretion to order costs against either or both parties.  When a court has discretion to award fees against either or both parties, the court’s decision on the matter will not be reversed on appeal absent an abuse of discretion.  
See
 
Evenson v. Evenson
, 2007 ND 194, ¶ 25, 742 N.W.2d 829.  “A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.”  
Hoggarth v. Kropp
, 2010 ND 197, ¶ 17, 790 N.W.2d 22 (quoting 
Estate of Loomer
, 2010 ND 93, ¶ 20, 782 N.W.2d 648).  Theresa Horsted makes no valid argument demonstrating that the court abused its discretion.  Because the statute clearly states the court may award costs against “either or both parties,” we affirm the court’s order dividing the custody investigator fees between the parties.

IV

[¶16] We affirm the court’s allocation of the custody investigator fees.  We remand to the district court with instructions to make additional findings regarding R.M.H.’s best interests to demonstrate the court’s factual basis for awarding joint decisionmaking responsibility and to address a method of resolving disputes when the parties do not agree on a parenting issue.  We also direct the court to consider evidence of domestic violence in light of the definition in N.D.C.C. § 14-07.1-01.  We finally instruct the court to make findings regarding R.M.H.’s best interests to establish the basis of its parenting plan decision.  We conclude the court’s amended judgment modifying visitation is not clearly erroneous but may be further amended, if appropriate, upon consideration of the court’s findings.  We affirm in part, reverse in part, and remand for further proceedings.

[¶17] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting.

[¶18] I respectfully dissent.

[¶19] I believe the district court clearly explained its reasons for choosing the father’s parenting plan over that of the mother’s.  The court had before it two proposals from which to choose.  The mother’s plan was extremely one-sided in her favor and one which the court found humiliating toward the father.  The court found the father’s plan to be much more reasonable.  I doubt that any objective reader of the plans would come to a different conclusion.

[¶20] The district court noted the mother’s treatment of the father had been controlling and humiliating.  Her proposed parenting plan continued that treatment.  For example, her proposed parenting plan states, “Plaintiff seeks sole decision making authority regarding the child’s education.  Prior to making the decision.  The Plaintiff will apprize the Defendant of the issue, and the basis for her decision.”

[¶21] Under her proposal, with detailed conditions and restrictions on the father, he was, for example, to receive “[s]upervised parenting time until the minor child reaches the age of three. . . . Said supervised parenting time will be a neutral parenting time facility, for a period of two hours.”

[¶22] The district court explained:

You are going [to] ask somebody who’s in his 30’s to have her look on while he takes care of his own child?  When before they got separated, she didn’t have any problem leaving him - - leaving the child with him.  That’s the same thing we saw when she went to his friend’s house, trying to get him to come home.  And then she’s shocked because he - - he said he wouldn’t do it.  I mean how humiliating.

[¶23] I believe the district court understood the law, properly found the facts, and reasonably chose between the parenting plans put before the court.

[¶24] I would affirm.

[¶25] Dale V. Sandstrom